Michael B. Shortnacy (SBN 277035)
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310
abayman@kslaw.com
mshortnacy@kslaw.com

*Attorneys for Subpoenaing Party*
*Boehringer Ingelheim Pharmaceuticals, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE RULE 45 SUBPOENAS ISSUED TO DR. RON NAJAFI AND EMERY PHARMA | Case No.:  21-mc-80304 <br><br> **BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S OPPOSITION TO DR. RON NAJAFI AND EMERY PHARMA'S EMERGENCY EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR BRIEFING ON THEIR MOTION TO QUASH SUBPOENAS PURSUANT TO L.R. 6-3 [Dkt. 9]** |

Boehringer Ingelheim Pharmaceuticals, Inc. (the subpoenaing party, or "BIPI"), opposes Dr. Ron Najafi's and Emery Pharma's (together, the responding parties, or "Emery"), Emergency *Ex Parte* Application For Order Shortening Time For Briefing On Their Motion To Quash Subpoenas Pursuant To L.R. 6-3 [Dkt. 9] (the "Application") on the grounds that the Application: (i) does not comply with L.R. 7-10 because Emery fails to cite (because there is none) any legal authority permitting their *ex parte* Application; (ii) does not comply with L.R. 6-3 because Emery failed to meet and confer with BIPI as required; and (iii) fails to identify any actual prejudice or emergency requiring immediate *ex parte* relief because BIPI's opposition to Emery's Motion to Quash Subpoena [Dkt. 1] is due in only four business days, on January 3, 2022, pursuant to L.R. 7-3.

While the Court should deny Emery's "emergency" Application, which was improperly filed on the eve of the Christmas holiday weekend, for any one of the foregoing reasons, the Court need not decide these issues now, nor wait for BIPI's opposition to the Motion to Quash. There is ample basis for the Court to transfer, *sua sponte*, the Motion to Quash to Judge Robin L. Rosenberg (S.D. Fla.) who is presiding over a multidistrict litigation established to coordinate the pretrial proceedings of cases involving claims of injury relating to the well-known heartburn medication Zantac.[1] The instant dispute over BIPI's subpoenas for fact witness testimony from Emery and Dr. Najafi, whose scientific testing is heavily relied on in plaintiffs' Master Complaints in the MDL, is precisely the type of related pretrial proceeding the MDL Court is best situated to decide.

### BACKGROUND.

Emery is a "litigation support lab" significantly involved with investigations regarding the relationship between ranitidine and NDMA.[2] On January 2, 2020, Emery filed a Citizen Petition with the United States Food and Drug Administration ("FDA") requesting, among other things, ranitidine's

---

[1] Specifically, *In re: Zantac (Ranitidine) Products Liability Litigation* (MDL No. 2924) was formed on February 6, 2020 for pretrial coordination of cases where plaintiffs allege they developed cancer as a result of the chemical compound N-Nitrosodimethylamine, or "NDMA" forming in Zantac and/or its active ingredient ranitidine. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2020 WL 582134, at *2 (J.P.M.L. 2020).

[2] *Scientific Litigation Support*, Emery Pharma, https://emerypharma.com/services/litigation-support/ (last visited Dec. 27, 2021) ("Emery Pharma is a litigation support lab with expertise in pharmaceutical, chemical, and medical device industries.").

---

removal from the market.[3]  Emery's Citizen Petition included data purportedly indicating that "while seemingly stable at room temperature, the ranitidine molecule is heat-labile and under elevated temperatures (e.g., 70ºC) progressively accumulates NDMA" and speculated, for example, that "elevated temperatures . . . would be routinely reached during shipment and during storage."[4] These same claims are asserted by the MDL plaintiffs in their Master Complaints.  On January 13, 2020, the MDL plaintiffs retained Emery Pharma to provide expert testimony.  Since the MDL's formation, more than 1,600 filed actions have been consolidated in the MDL. In addition, approximately 62,000 claimants who allege ingesting Zantac caused them to develop cancer, have claims lodged in a census registry.

After Plaintiffs engaged Emery (and Dr. Najafi) as a proposed expert, Emery nevertheless conducted a public relations campaign to raise alarm about Zantac by claiming the product's active ingredient, ranitidine, could form NDMA.  For instance, Dr. Najafi presented at an online conference where he spoke about ranitidine and NDMA.[5]  A now former Emery employee, Eshani Nandita, also presented data in a video uploaded to YouTube claiming the alleged formation of NDMA in Zantac "is a global health concern."[6]  Dr. Najafi has also engaged in numerous news interviews with high-profile news agencies such as USA Today, Bloomberg, and CBS News where he discussed ranitidine's alleged potential to form NDMA.[7]  Despite broadcasting this information on public platforms, Emery now incorrectly insists in its Motion to Quash that BIPI's subpoenas,

---

[3] Emery Pharma Citizen Petition to the United States Food and Drug Administration (Jan. 2, 2020), available at https://www.regulations.gov/document/FDA-2020-P-0042-0001.
[4] *Id.* at 3.
[5] *See Editors' Series: Genotoxic Impurities and Drug Quality: Lessons from the Nitrosamine Contamination Crisis*, PHARMTECH (July 14, 2020), https://www.pharmtech.com/view/editors-series-genotoxic-impurities-and-drug-quality-lessons-nitrosamine-contamination-crisis-0.
[6] Emery Pharma, *Dr. Eshani Nandita of Emery Pharma shares the results of the stability study of Ranitidine*, YOUTUBE (July 23, 2020), https://www.youtube.com/watch?v=yptaLtg2yj0.
[7] Nathan Bomey & Ken Alltucker, *More generic Zantac drugs recalled as fears linger over cancer risk*, USA TODAY (Jan. 10, 2020), https://www.usatoday.com/story/money/2020/01/10/generic-versions-zantac-recalled-cancer-fda/4429631002/; Michelle Cortez, *Carcinogen in Heartburn Drug May Build in Storage, Lab Finds*, BLOOMBERG L.P. (Jan. 2, 2020), https://www.bloombergquint.com/business/carcinogen-in-heartburn-drug-may-build-during-storage-lab-finds; *California lab finds new clues in popular heartburn drug's possible cancer risk*, CBS NEWS (Jan. 10, 2020), https://www.cbsnews.com/news/zantac-heartburn-drug-ranitidine-possible-link-to-cancer-california-lab-emery-parma-investigating/.

which seek information relating to these same matters, are somehow precluded because plaintiffs have designated Emery as an expert.

# ARGUMENT.

### A. Emery's Ex Parte Application Should be Denied Because Emery Failed to Comply with Local Rules.

Emery's Motion to Shorten Time is procedurally defective. First, Emery failed to comply with L.R. 7-10 by failing to cite any authority permitting their *ex parte* Application. For this reason alone, the motion should be denied. *See, e.g.*, *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1061 (N.D. Cal. 2016) (striking *ex parte* motion pursuant to Civil Local Rule 7-10 because it failed to "cite to any authority permitting the filing of an ex parte motion" or "provide any reason for filing ex parte'); *Bertuccio v. San Benito Cty.*, No. 13–CV–01339–LHK, 2013 WL 2147421, at *3 (N.D. Cal. May 15, 2013) ("None of Plaintiffs' motions identified any authorization for her ex parte communications. This alone would justify denial.")); *Rah v. Asiana Airlines Inc.*, No. 14-CV-05603-YGR, 2018 WL 3972031, at *1, n.1 (N.D. Cal. Aug. 20, 2018); *Ha v. McGuiness*, No. C 07-3777-SBA, 2009 WL 462803, at *2 (N.D. Cal. Feb. 23, 2009). In addition, Emery failed to comply with L.R. 6-3 (2), (4), (5), and L.R 37-1(a), because Emery did not meet and confer with BIPI.

### B. The Application Should be Denied Because There is No Emergency or Prejudice Justifying Emery's Ex Parte Relief.

Emery also fails to carry its burden of demonstrating that it will suffer prejudice by allowing BIPI to oppose the Motion to Quash under a standard briefing schedule pursuant to L.R. 7-3(a). There is simply no reason to expedite the briefing by four business days, particularly where much of BIPI's time to oppose the Motion under the ordinary briefing timeline falls over the holidays. Emery also argues that it will "suffer substantial harm" by being "forced to have to appear in an MDL litigation which they are not a party to." But regardless of whether BIPI moves the MDL Court to compel compliance with the subpoenas, this exact argument was considered and denied by the JPML with respect to another third-party's motion to quash a subpoena:

> [The non-party] also argues that transferring his motion to quash is contrary to the intent of Federal Rule of Civil Procedure 45 because it would result in the motion to quash being heard in the issuing court, as opposed to the court where the subpoena was

- 3 -

> served, and would impose an undue burden upon a non-party. At its root, this is an objection to transfer of any subpoena action under Section 1407. As explained in our order transferring the Spaulding subpoena, transfer of a motion to quash is not inconsistent with Rule 45. *See id.* at 3. And, while it might impose some burden on [the non-party] to litigate his motion to quash outside his home forum, it would be inefficient and a waste of judicial resources to require the transferor court to learn the particulars of the MDL litigation so as to be able to adjudicate the motion to quash. Furthermore, Judge Rosenberg has conducted numerous conferences and hearings in the MDL using videoconferencing technology.

*In Re: Zantac (Ranitidine) Prod. Liab. Litig.*, MDL No. 2924 (J.P.M.L.), Dkt. 950 [See accompanying Shortnacy Decl. at *Ex. A*]. In fact, the Zantac MDL employs many best-practices to avoid burdening third-parties residing outside the District, such as holding virtual hearings using videoconferencing technology and not requiring *pro hac vice* motions to e-file. Given the many orders establishing efficient dispute resolution in the MDL, Emery's argument that it would be prejudiced by appearing in that Court versus this Court has no foundation.

### C. The Court Should Transfer the Motion to Quash to the MDL Court.

First, it is well established that MDL courts have jurisdiction to compel deposition testimony in any district. 28 U.S.C.A. § 1407 (b) (MDL judges "may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions."); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2020 WL 8673437, at *3 (N.D. Fla. Nov. 18, 2020) (noting 28 U.S.C. § 1407 gives district court judges the power to power to compel compliance with deposition subpoenas); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 378 (D.D.C. 2017) (collecting cases); *In Re: Blue Cross Blue Shield Antitrust Litigation*, 2017 WL 11539533 (N.D. Ala. 2017) ("The import of this statute is clear, and has been resoundingly recognized by districts throughout the country: the [MDL] court has exclusive power to handle all pretrial proceedings, which necessarily includes the power to enforce a deposition subpoena . . . .").

Second, the MDL Court is best situated to resolve the Motion, as the JPML has held in the context of another motion to quash involving another third-party testing lab, Valisure, and one of its principals, who like Emery and Dr. Najafi, conducted testing relied on in the Master Complaints. There, the JPML determined the MDL Court was "in a superior position" to resolve this dispute:

> [T]he subpoena action undoubtedly shares common factual questions with the actions in MDL No. 2924. The subpoena was issued by the transferee court, and it seeks discovery

- 4 -

> relating to the scientific testing from which this litigation arose. The motion to quash on its face raises overbreadth objections to the subpoena. . . . Such objections will require assessment of GSK's need for the discovery relative to the needs of the Zantac litigation. The transferee court is well placed to resolve Mr. Bretholz's challenges to the subpoena given its extensive familiarity with the factual and legal issues in MDL No. 2924—something that, contrary to Mr. Bretholz's arguments, cannot easily be shared or coordinated with the court in New York.

*Exhibit A*; *see also* Shortnacy Decl. at *Exhibit B*. The MDL has already ruled on similar issues and found that discovery of another third-party's analytical data on ranitidine was "vitally important" to this MDL. *In Re: Zantac (Ranitidine) Prod. Liab. Litig.*, 9:20-md-02924, Dkt. 4566 ("The Valisure study and the scientific linkage between NDMA and ranitidine are vitally important issues in this litigation.") [Shortnacy Decl. at *Ex.C*]. Here, like with Valisure, MDL plaintiffs rely on Emery's testing data to support their claims. Therefore, the MDL court is best suited to resolve this dispute.

Finally, this Court should exercise its authority under Rule 45(f) to transfer, *sua sponte*, the Motion to the MDL Court, as is routinely done where, like here, the court overseeing the underlying litigation is best suited to resolve the motion to quash. *Petersen v. Douglas County Bank & Trust Co.*, 940 F.2d 1389 (10th Cir. 1991) (affirming *sua sponte* transfer of motion to quash to the court overseeing the underlying litigation); *Fintiv, Inc. v. STMicroelectronics, Inc.*, No. 3:20-MC-0079-G-BT, 2021 WL 2784472, at *1 (N.D. Tex. Jan. 14, 2021) (transferring *sua sponte* a motion to compel and noting "Rule 45(f) does not require that a motion to transfer be filed, and the Court may *sua sponte* order transfer where appropriate"); *Parker Compound Bows, Inc. v. Hunter's Mfg. Co. Inc.*, No. 5:15-MC-00064, 2015 WL 7308655, at *1 (N.D. Ohio Nov. 19, 2015).

For the foregoing reasons, Emery's Application should be DENIED and the Motion to Quash should be TRANSFERRED to *In re: Zantac (Ranitidine) Prod. Liab. Litig.* (MDL No. 2924).

- 5 -

OPPOSITION TO DR. RON NAJAFI AND EMERY PHARMA'S EMERGENCY EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR BRIEFING ON THEIR MOTION TO QUASH SUBPOENAS PURSUANT TO L.R. 6-3, 21-mc-80304

Dated December 27, 2021

Respectfully submitted,

By: */s/ Michael B. Shortnacy*
Michael B. Shortnacy (SBN 277035)
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310
mshortnacy@kslaw.com

*Attorneys for Boehringer Ingelheim Pharmaceuticals, Inc.*